# Harris v. Miller.

*Contest of Claim of Exemption to a Debt sought to be subjected by Garnishment to Payment of a Judgment.*

1. *Garnishment; a legal proceeding.*—A garnishment is not an equitable, but essentially a legal proceeding; and only such demands as the

[Harris v. Miller.]

debtor, by an action at law in his own name, can enforce, the creditor may thereby reach and condemn.

2. *Same; when legal demand can not be subjected.*—If, however, a legal demand is complicated and involved with matters strictly and purely of equitable cognizance, which must be adjusted before full and complete justice can be done, it can not be reached by garnishment, and the parties will be remitted to a court of equity.

3. *Sale of land under power contained in mortgage, where mortgagee becomes the purchaser; effect of.*—A sale of land under a power contained in a mortgage, at which the mortgagee became the purchaser, at a bid less than the mortgage debt, cuts off and bars the equity of redemption, and the mortgage debt is thereby satisfied and extinguished to the extent and amount of the mortgagee's bid, by mere operation of law; and thereafter the mortgagee can maintain an action at law to recover only so much of the debt as his bid may not have satisfied.

4. *Same; may be disaffirmed in equity by mortgagor.*—Such sale is binding on the mortgagee, and can only be disaffirmed at the election of the mortgagor, or those claiming under him, if seasonably expressed, and by them only in a court of equity. A court of law, looking only to the legal title vested in the mortgagee, and being incapable of adjusting the equities between the parties, and of granting the relief essential to a termination of all litigation, and to full and complete justice between them, can not avoid the sale.

5. *Same; when bid less than debt, balance of debt a lawful charge under the statute of redemption.*—Where a sale of land is made under a power contained in the mortgage, and the mortgagee becomes the purchaser at a bid less than the amount of the mortgage debt, conceding that the statutory right of redemption extends to such a sale, a question not decided, the balance of the debt is a *lawful charge* on the land, which the mortgagor coming to redeem is bound, under the statute, to pay; and an offer to redeem which does not include such balance, is insufficient.

6. *Same; when tender insufficient.*—In such case a tender by the mortgagor of the amount bid by the mortgagee, with ten per cent. *per annum*, is insufficient, although accompanied by an offer to pay *all lawful charges*, where it is manifest that, in the use of the words "lawful charges" in the offer, he did not intend to include the balance due on the mortgage debt.

7. *Offer to redeem lands; effect on sale in a court of law.*—Estoppels or ratifications resting merely in parol can not, in a court of law, affect the title to land; and hence, an offer to redeem land sold under a power contained in a mortgage, resting merely in parol, can not, in a court of law, be deemed a ratification or confirmation of the sale, even if that court could inquire into the affirmance or disaffirmance of such sale.


Appeal from Hale Circuit Court.

Tried before Hon. GEO. H. CRAIG.

This was a contest of an exemption claimed by Frank M. Harris, the appellant, to a debt which William H. Locke owed him, and which William G. Miller, the appellee, sought, by process of garnishment, to subject to the payment of a judgment for $243.87, which he recovered on 18th April, 1877, in the Circuit Court of Hale county against Harris. The garnishment was issued on 11th July, 1877, and was served on the same day. The admissions and statements made by the garnishee in his answer, which was filed on 13th October, 1877, may, for the purposes of this report, be stated as follows: On

22nd of February, 1873, the garnishee borrowed from Harris $800, and gave him his promissory note for $864, the amount borrowed and interest for one year, payable on 22nd of February, 1874; and on the same day, to secure the payment of this note, he executed to Harris a mortgage on an undivided half interest in a certain house and lot situated in the town of Greensboro, and also on an undivided half interest in a certain tract or parcel of land near Greensboro, containing fifty acres, with a power of sale on default. On 1st March, 1875, default having been made in the payment of the note, the property conveyed by the mortgage was sold under the power of sale, one Breen purchasing the mortgaged interest in the tract of land near Greensboro for $175, and Harris bidding in for himself the half interest in the lot in Greensboro, at $500. On 23rd of February, 1877, the garnishee tendered to Harris the sum of $600 to redeem the interest in the lot in Greensboro bid in by him, and also "at the same time tendered to the said Harris any and all lawful charges that he might have." This tender Harris refused to accept, and also refused to inform the garnishee whether or not there were "any other lawful charges due him." The garnishee was in possession of this property at the time he filed his answer.

On 30th October, 1877, Harris filed with the clerk of the Circuit Court his affidavit, claiming the balance due on the debt as exempt, and stating the amount of such balance to be $760; and with his affidavit he filed an inventory of his personal property, as required by statute, which aggregated in value $240. On 25th March, 1878, Miller, the plaintiff in the judgment, filed his affidavit under the statute, contesting the claim of exemption, and averring, "that in the belief of this affiant the said claim is invalid in part, and specifies and says, that the indebtedness of the garnishee, W. H. Locke, to him, the said Harris, was, at the time of the service of said garnishment, $902.97, as shown by the answer of said Locke as garnishee, and not $760, as stated by said Harris in his claim of exemption; and that at this time the amount of said Locke's indebtedness to said Harris is $948.29, and that said amount, due from Locke, together with the personal property claimed by said Harris in his affidavit of exemption, amounts to more than $1,000, the amount allowed him by law."

On the trial of the contest, had at the spring term, 1879, of said court, on an issue made up under the statute, the garnishee, Locke, was examined as a witness on behalf of the plaintiff, and the defendant on his own behalf. The loan of the money, the execution of the mortgage, the sale under the power contained therein, and the purchases by Breen and the defendant were shown by the testimony of both witnesses to be

substantially as stated in the answer of the garnishee. The testimony of Locke as to the tender was, that on 23rd of February, 1877, he tendered to Harris $600, "and offered the amount paid by said Harris for the interest in said house and lot at said mortgage sale, $500 with ten per cent. *per annum* thereon, and offered to pay all other lawful charges which said mortgagee had against him, to redeem said interest in said house and lot, which said Harris refused to accept." He also testified, that "there was then due on the said note and mortgage $933.12, together with the lawful charges for advertising and selling said property." On cross-examination, however, he testified that, in arriving at this amount "he had included the $500 bid by Harris for the house and lot upon the assumption, that by the tender of the $600 the title to the house and lot was restored to witness, and that Harris had no mortgage thereon, but that he, witness, owed Harris the amount of the tender as a debt; . . . that the amount so tendered he included as an unsecured indebtedness from him to Harris, and, in stating his present indebtedness to Harris, he did not treat the $500 bid at the sale as a credit on his mortgage; and that if it were so treated, holding his tender as insufficient, and the title to the house and lot still in Harris, by the purchase at the mortgage sale, his indebtedness" would be decreased by that amount and interest thereon. He further testified, that he made the tender under advice of counsel, by whom he was advised, that he could redeem from Harris by paying the amount of the bid, $500, ten per cent. *per annum* thereon, and all lawful charges. The defendant testified that he declined to receive the tender "or any thing less than the amount due on the note and mortgage."

This being the substance of the evidence introduced on the trial, the court, at the written request of the plaintiff, charged the jury "that under the evidence in this case $179.50 of the debt, which garnishee, W. H. Locke, owed the defendant, F. M. Harris, is liable to the satisfaction of plaintiff's debt, and that their verdict must be in favor of the plaintiff, condemning $179.50 of the Locke debt." The defendant excepted to this charge, and asked the court in writing to charge the jury as follows: "If the jury believe from the evidence that the tender of Locke to Harris of $600 was less in amount than was then due on the debt from Locke to Harris, secured by mortgage, with interest thereon, and all other lawful charges, then such tender does not have the effect to re-invest Locke with the title to the house and lot, which Harris, the mortgagee, had purchased at a sale under the mortgage to him for $500; and such sum of $500 can not be treated as a debt still due Harris from Locke, but as a credit on the mortgage debt, thereby reducing

the amount which Locke owed on said mortgage debt; and the balance still due from Locke is not sufficient to make Harris' claim of exemption exceed the amount allowed in personal property by law." This charge the court refused to give, and the defendant excepted.

There was a judgment for the plaintiff condemning $179.50 of the debt due defendant by Locke to the payment of his judgment, from which the defendant appealed, and here assigns the rulings above noted as error.

THOS. R. ROULHAC, for appellant. (1) The purchase made by Harris at his own sale under the power contained in the mortgage, was a payment *pro tanto* of the mortgage debt. Applying this payment, it is clear that the balance would be exempt. (2) But it is contended that this payment was in effect destroyed by the tender which Locke afterwards made to Harris. It is submitted on behalf of the appellant, that garnishment is not the remedy to try that question, or to determine the rights of the parties growing out of the tender made by Locke. Garnishment and the proceedings thereunder are strictly legal and statutory. As a legal remedy, it can not be resorted to for the determination of other than legal rights; as a statutory remedy, it is applicable only in the instances, and to the extent which the statute prescribes.—*Henry v. Murphy & Co.*, 54 Ala. 246; *Toomer, Sykes & Billups v. Randolph*, 60 Ala. 356. There must be a debt owing by the garnishee to the defendant, for which the latter may maintain debt or *indebitatus assumpsit.*— *Walke v. McGehee*, 11 Ala. 273; *Bingham v. Rushing*, 5 Ala. 403; *Cook v. Walthall*, 20 Ala. 334; *Lundie v. Bradford*, 26 Ala. 514; *Henry v. Murphy*, 54 Ala. 246; *Toomer, Sykes & Billups v. Randolph*, 60 Ala. 360; *Price v. Masterson*, 35 Ala. 492. The effect of the tender and the rights of the parties thereunder can be adjudicated and determined alone in a court of equity; and garnishment, being a legal proceeding, simply and merely, is not the remedy. *Roby v. Labuzan*, 21 Ala. 60; *Henry v. Murphy*, 54 Ala. 246; *Harrell v. Whitman*, 19 Ala. 135. (3) Conceding that a full tender by Locke to Harris would revest, *proprio vigore*, in Locke the title to the property conveyed by him under the mortgage, and bid in by Harris at the mortgage sale, nothing less than the whole amount due on the mortgage debt, with the interest and proper charges, would so operate, when proceeding from the mortgagor to the mortgagee. In this State, and certainly after the law-day of the mortgage, the mortgagee has the legal title to the land.— *Welsh v. Phillips*, 54 Ala. 309; *Barker v. Bell*, 37 Ala. 358; *Childress v. Monette*, 54 Ala. 318; *Toomer, Sykes & Billups v. Randolph*, 60 Ala. 360.

[Harris v. Miller.]

And the only way the mortgagor can divest the legal title conveyed by the mortgage, when the mortgagee has not parted with it, is by payment of the mortgage debt.—1 Hill. on Mort. ch. 14, p. 223; 2 Jones on Mortg. § 1072; *Collins v. Riggs*, 14 Wall. 491; *White v. Hampton*, 13 Iowa, 264; *Ten Eyck v. Casad*, 15 Iowa, 524; *Johnson v. Harmon*, 19 Iowa, 56; *Barker v. Bell*, 37 Ala. 354; *Powell v. Williams*, 14 Ala. 476; *Gliddon v. Andrews*, 14 Ala. 733. (4) It was further contended by appellant's counsel, in an elaborate argument, that a mortgagee, purchasing at his own sale, under a power contained in the mortgage, is not *the purchaser* from whom, under the Code, redemption can be made by the debtor, by paying the purchase-money, percentage and charges.

J. E. WEBB, *contra*.—(1) The purchase by Harris, the mortgagee, at his own sale, was not void, but voidable merely, and that only at the election, and on the application of Locke, the mortgagor. Nor did Locke, by seeking to redeem under the statute, seek to avoid the sale; but he thereby ratified it as a foreclosure of the mortgage.—1 Hilliard on Mort., p. 142, § 22; *Williams v. Hatch*, 38 Ala. 342; 45 Ala. 482; 41 Ala. 693; 29 Ala. 367; 27 Ala. 758. (2) It is not necessary for the appellee to maintain that the tender made by Locke re-invested him with the legal title to his house and lot, for that is not the question at issue. Whether he did or did not, when he tendered to Harris the $600 *and all lawful charges*, if it is true, as contended for the appellant, that the balance of Locke's debt over and above the $500 was a lawful charge, then it follows that Locke became debtor to Harris for the whole amount of money originally borrowed, with interest, less the amount of Breen's purchase, $175. (3) The right of redemption under the statute is entirely different from the equity of redemption residing in a mortgagor before foreclosure of the mortgage. The foreclosure, whether by decree of a court of equity, or by sale under a power, forever cuts off the equity of redemption. *Childress v. Monette*, 54 Ala. 317. The statutory right of redemption only begins where the equity of redemption is cut off. It is not disputed that a mortgagor, where he seeks to redeem under his equity of redemption before foreclosure, must tender the whole mortgage debt. But when he comes to redeem under the statute after a foreclosure, then he must look to the statute for his rights, and to determine what he must do.—*Trimble v. Williamson*, 49 Ala. 525; 32 Ala. 9; 37 Ala. 354; 14 Wall. 491. (4) The title of the purchaser at mortgage sale is outside of, and beyond the mortgage title. It is independent of any balance that may be due to the mortgagee upon the debt. And when the mortgagor, after such sale, comes to re-purchase

or buy back his title from the purchaser, he treats with him as purchaser, and not as mortgagee. Then how can it be said that any balance of the mortgage debt, unsatisfied by the sale, is a lawful charge upon such purchaser's title? The mortgage, as a mortgage, that is, as an incumbrance, is forever discharged. That was the object and effect of the sale. Hence we say that when Locke came to redeem from Härris, as purchaser, he was not bound to tender or pay to Harris any balance that might be due to him on his note, which was then an unsecured debt; and that the tender which Locke did make to Harris, made him the debtor to Harris for that amount, for the $600 so tendered, *as well as the balance* that he owed him on the note. (5) Locke's tender was not only the $600, but also *all lawful charges*. If the balance due to Harris was a *lawful charge*, then Locke's tender certainly covered and included it. Section 2879 of the Code of 1876 declares that such *tender* re-invested the title in him and made him a debtor to Harris.

BRICKELL, C. J.—On first examination of this cause, we were of opinion there was no error in the record of injury to the appellant. Further examination has led us to a different conclusion. A garnishment is not an equitable proceeding. It is essentially a legal proceeding, assimilated to an attachment of personal property; and, in its nature and operation, is the institution of a suit by a creditor against the debtor of his debtor. Only such demands, as the debtor by an action at law in his own name can enforce, the creditor may reach and condemn by this remedy; and whatever defenses would prevail if the debtor were himself suing, will avail against the garnishing creditor. Equitable demands can not be reached, and if a legal demand exists, complicated and involved with matters strictly and purely of equitable cognizance, which must be adjusted if full and complete justice is done, the parties will be remitted to a court of equity.—1 Brick. Dig. 175, §§ 313–14; *Toomer v. Randolph*, 60 Ala. 356.

The relation existing between the appellant, Harris, and the garnishee, Locke, was that of mortgagor and mortgagee. By the mortgage Harris became clothed with the fee-simple estate in the lands, which was subject to be defeated, if, on the law-day, the mortgagor paid the mortgage debt. After the law-day, and default in the performance of the condition, in the contemplation of a court of law, the estate was freed from the condition annexed to it. There remained in the mortgagor no more than the equity of redemption, of which, as between mortgagor and mortgagee, courts of law do not take notice.— *Welsh v. Phillips*, 54 Ala. 309.

The equity of redemption was subject to foreclosure; it could

[Harris v. Miller.]

be cut off and barred by a sale under the power contained in the mortgage. At such sale, the mortgagee could become a purchaser, and by his purchase the mortgage debt would be satisfied and extinguished, to the extent and amount of the mortgagee's bid, by mere operation of law; the law of itself applying the bid to the payment of the mortgage debt, and of such expenses incident to the sale, as were necessarily incurred, or, it may be, by the mortgage stipulated, should be paid from the proceeds of sale. Thereafter the mortgagee can maintain an action at law to recover only so much of the mortgage debt as the bid may not have satisfied.—2 Jones on Mort. § 953.

While the mortgagee may purchase at a sale made under a power in the mortgage, the mortgagor may, at his election, disaffirm the sale, if the election is seasonably expressed. The mortgagor only, or those claiming under him, can disaffirm the sale. On the mortgagee it is binding, and his only right and remedy, if the mortgagor does not come in to disaffirm or avoid, is to resort to a court of equity to remove all doubt and uncertainty from the title by a confirmation of the sale, or by a resale under a decree of the court, if that shall appear to be equitable.—*McLean v. Presley*, 56 Ala. 211. It is, however, only in a court of equity that the sale may be disaffirmed. At law, in the absence of actual fraud, if the sale has been regular, it is valid, and the mortgagee is regarded as clothed with the legal estate, upon which he can maintain ejectment against the mortgagor.—2 Jones on Mort. § 1876; *Charles v. Du Bose*, 29 Ala. 367; *Hawkins v. Hudson*, 45 Ala. 482. The court of law can not avoid the sale, because it is incapable of adjusting the equities between the parties. When the election to disaffirm the sale is manifested, the mortgagee becomes chargeable as a trustee of the rents and profits while he may have been in possession, which are by a court of equity applied to pay the mortgage debt, and, if after applying them, there is a balance of the mortgage debt unpaid, a sale of the lands will be ordered to pay it. The relief essential to full and complete justice between the parties, and to put an end to all litigation between them, a court of equity alone can grant. Therefore it is, and because a court of law looks only to the legal estate in lands, that the sale in that court is operative and valid, and can be avoided only in a court of equity.

The sum bid by appellant for the lands at the mortgage sale, having to the amount of the bid satisfied and extinguished the mortgage debt, the balance of the debt, added to the value of the specific articles of personal property claimed and retained by the appellant, did not equal one thousand dollars, the amount of the exemption to which he was entitled. The sale was not affirmed or disaffirmed by the offer of the mortgagee to redeem

3

under the statute, if it were conceded that the statutory right of redemption extends to a sale at which the mortgagee becomes the purchaser. The offer was not of the kind or character on which a statutory redemption could be effected. Though it is said it embraced all *lawful charges* the appellant may have had on the land, it is manifest it did not embrace the payment of the entire mortgage debt, and that the object in making the offer was to remove so much of the debt as was unpaid after deducting the amount bid at the mortgage sale, as an incumbrance or charge on the lands. A mortgagor, coming to redeem under the statute, is bound by the terms of the statute to pay, not only the sum bid at the mortgage sale, with ten per cent. *per annum* thereon, but *all other lawful charges* which the purchaser may have or can assert. The word *charge*, as we have heretofore said, is of very large signification, and in the statute its proper signification is every lien, or incumbrance, or claim the purchaser may have on the premises, and for which at law or in equity he would be entitled to hold the lands as security, or to the satisfaction of which a court of equity would condemn them.—*Grigg v. Banks*, 59 Ala. 311; *Lehman, Durr & Co. v. Collins*, 69 Ala. 127. The *charge* may and will vary with different purchasers. Whether the mortgagee or a stranger may be the purchaser, if he removes a valid incumbrance on the lands, whatever was justly expended in the removal becomes a *charge* the mortgagor coming to redeem is bound to pay, and the offer to redeem will not be sufficient, if, when its amount is known, it is not embraced. It is a just and plain principle of the law of mortgages, that payment of the mortgage debt is a condition precedent to redemption.—*Gliddon v. Andrews*, 14 Ala. 733. This principle the statute of redemption was not intended to disturb or change. And if the statute extends to sales at which the mortgagee becomes the purchaser, the mortgagor can not redeem without paying the entire debt. The debt, so far as it is not extinguished by the bid at the mortgage sale, is a *lawful charge* on the land. For if the redemption were effected, the title acquired would at once enure to the benefit of the mortgagee, and for the unpaid balance of the mortgage debt the mortgage would be a valid, operative security.—*Stewart v. Anderson*, 10 Ala. 504. The demand of the mortgagor to be let in to redeem without paying the mortgage debt, is opposed to the plainest dictates of right and justice, and is not sanctioned by any principle prevailing in courts of law or of equity. If the purchase by the mortgagee has been at a sum disproportionate to the value of the lands, or if the lands have increased in value, the mortgagor, by a mere disaffirmance of the sale in a court of equity, can obtain a re-sale, protecting himself from all loss. Not only can he obtain a re-sale, but he

[Rose v. Gibson.]

can convert the mortgagee into a trustee of the rents and profits, having them applied to pay the mortgage debt. The mortgage, however, would remain a security for the whole debt, and exact justice would be meted out to both parties. A sale under a power in a mortgage, fairly made, operates as a strict foreclosure by a decree of a court of equity—it cuts off and bars the equity of redemption. This is true only, however, when a stranger becomes the purchaser. It is only partially true, when the mortgagee becomes the purchaser, and the restoration of the parties to the relation of mortgagor and mortgagee rests in the mere election of the mortgagor. The statute, and the statutory right of redemption, can not be perverted into an instrumentality, by which the mortgagor may deprive the mortgagee of the security for the debt which the mortgage affords. The offer to redeem made by the mortgagor did not vary his relation to the mortgagee. The mortgage debt, in a court of law, and until the sale under the mortgage is disaffirmed, is paid to the amount bid by the appellant at the mortgage sale, and he is the owner of the lands.

The offer to redeem under the statute rests merely in parol, and can not in a court of law, if that court could inquire into the affirmance or disaffirmance of the sale, be deemed as a ratification or confirmation. Estoppels or ratifications resting merely in parol can not in a court of law affect the title to lands.—*Gimon v. Davis*, 36 Ala. 589.

Upon the undisputed facts, the debt sought to be reached by the garnishment, must be regarded as having been paid to the extent of the bid of the appellant at the mortgage sale, and being extinguished to that extent, the remainder was exempt to the appellant. The rulings of the Circuit Court were not consistent with these views.

Reversed and remanded.